# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
Civil Action No. 3:14-CV-670

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| NATHAN T. KENNEDY, ) | |
| ) | |
| Defendant. ) | |

NOW COMES the United States of America, Plaintiff herein, by and through the Attorney General of the United States, and his delegate, Anne M. Tompkins, United States Attorney for the Western District of North Carolina, and for its complaint against the Defendant, hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action brought by the United States of America ("United States") seeking civil penalties against Defendant Nathan T. Kennedy pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) 12 U.S.C. § 1833a.

## JURISDICTION AND VENUE

2. Jurisdiction is predicated upon 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1345 (United States as a plaintiff), and 12 U.S.C. § 1833a (civil penalty action to be brought by the Attorney General).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims of the Plaintiff occurred in this district.

## PARTIES

4. The Plaintiff is the United States of America, which brings this action pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) 12 U.S.C. § 1833a.

5. The Defendant is Nathan T. Kennedy ("Defendant"), who, upon information and belief, is currently residing within the Western District of North Carolina. At the time of the events alleged in this complaint, Defendant was a licensed mortgage broker in the State of North Carolina, was employed as a mortgage professional, and on several occasions obtained financing to purchase and improve residential real estate located in the Western District of North Carolina.

## FACTS

6. All acts and omissions of Defendant alleged in this complaint occurred within the Western District of North Carolina.

7. At the time of the events alleged in this complaint, Branch Banking and Trust Company ("BB&T") was a bank operating in North Carolina.

2

8. At the time of the events alleged in this complaint, BB&T was a financial institution within the meaning of 18 U.S.C. §20 and an institution the accounts of which were insured by the Federal Deposit Insurance Corporation ("FDIC") within the meaning of 18 U.S.C. §1014.

**The 2006 BB&T Loan**
*221 Circle Avenue, Charlotte, North Carolina*

9. On or about December 13, 2006, Defendant signed and submitted an application to BB&T for a mortgage loan to be secured by real estate located at 221 Circle Avenue, Charlotte, North Carolina. ("2006 BB&T Loan").

10. In the application for the 2006 BB&T Loan, the Defendant falsely represented that his gross monthly salary was $33,000.00. The statement was false because the Defendant's monthly income at the time was substantially below the amount he claimed. In fact, his income for the entire year of 2006 was less than $30,000. This was a false statement made for the purpose of influencing the actions of BB&T in the granting of a mortgage loan

11. Also in the application for the 2006 BB&T Loan Defendant represented that he had a balance of $105,930.83 in an ING Bank account, and provided altered ING paper statements indicating that amount. This was a false statement made for the purpose of influencing the actions of BB&T in the granting of a mortgage loan. At the time the Defendant submitted the 2006 BB&T Loan application, he had only $53.80 in that ING Bank account.

12. Also in the application for the 2006 BB&T Loan, the Defendant failed to disclose all assets owned by him and all liabilities for which he was responsible, including but not limited to, the following:

- real property Defendant owned located at 400 McDonald Avenue, Charlotte, North Carolina, encumbered by a deed of trust in the original amount of $750,000 which

represented a loan in that amount that the Defendant had obtained from National City Mortgage Company;

- real property located at 54 Plum Tree Road, Cape Charles, Virginia, encumbered by a deed of trust in the original amount of $465,000 which represented a loan in that amount that the Defendant had obtained from SussexMortgage.com, LLC.

These were false statements and material omissions on an application to an FDIC-insured institution, made for the purpose of influencing the actions of BB&T in the granting of a mortgage loan.

13. Also in the application for the 2006 BB&T Loan, the Defendant falsely represented that the house at 221 Circle Avenue, Charlotte, North Carolina would be his personal residence. This was a false statement made for the purpose of influencing the actions of BB&T in the granting of a mortgage loan. To the contrary, the Defendant at that time did not have sufficient income or assets to be able to afford the monthly payments on the mortgage loan he was obtaining from BB&T and was intending to improve and then quickly sell the property for a profit without making it his primary residence.

14. Based on the representations made by the Defendant in the 2006 BB&T Loan application, BB&T issued to Defendant a mortgage loan in the amount of $968,000.00.

### The 2007 BB&T Loan
*221 Circle Avenue, Charlotte, North Carolina*

15. On or about December 28, 2007, Defendant signed and submitted an application to BB&T for a mortgage loan to be secured by real property located at 221 Circle Avenue, Charlotte, North Carolina ("2007 BB&T Loan"). Upon information and belief, this loan was to pay off the 2006 BB&T Loan and to pay for the construction and/or continued construction of a new or improved residence on the property.

16. In the 2007 BB&T Loan application the Defendant represented that he had $125,479.94 in an ING Bank account. This was a false statement made for the purpose of influencing the actions of BB&T in the granting of a mortgage loan. At the time of the 2007 BB&T Loan application, the Defendant had only $56.18 in that ING Bank account.

17. Also in 2007 BB&T Loan application, the Defendant represented that he owned two houses at 11 North Park Row in Cape Charles Virginia, each worth $425,000 and that only one of them had a mortgage lien on it. This was a false statement made for the purpose of influencing the actions of BB&T in the granting of a mortgage loan. At the time of the 2007 BB&T Loan application the Defendant owned only one house at 11 North Park Row in Cape Charles Virginia. The result of this double listing was that the Defendant's net worth on the 2007 BB&T Loan application was falsely increased by $425,000.

18. Also in the application for the 2007 BB&T Loan, the Defendant failed to disclose all assets owned by him and all liabilities for which he was responsible, including but not limited to, the following:

- real property Defendant owned located at 400 McDonald Avenue, Charlotte, North Carolina, encumbered by a deed of trust in the original amount of $750,000 which represented a loan in that amount that the Defendant had obtained from National City Bank.

This was a false statement and material omission made for the purpose of influencing the actions of BB&T in the granting of a mortgage loan.

19. Also in the application for the 2007 BB&T Loan, the Defendant falsely represented that the house at 221 Circle Avenue, Charlotte, North Carolina would be his personal residence. This was a false statement made for the purpose of influencing the actions of BB&T in the granting of a mortgage loan. To the contrary, the Defendant at that time did not have sufficient income or assets to be able to afford the monthly payments on the mortgage loan he was

5

obtaining from BB&T and was intending to improve and then quickly sell the property for a profit without making it his primary residence.

20. Based on the Defendant's representations in the 2007 BB&T Loan, BB&T issued to Defendant a mortgage loan in the amount of $1,137,500.00.

21. In or about 2009, the Defendant defaulted on his 2007 BB&T Loan and stopped making payments on that loan. BB&T foreclosed on the property and it was eventually sold on May 29, 2009 with a resulting loss to BB&T of $ 597,824.83.

## **FIRST CAUSE OF ACTION**

22. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

23. On or about December 13, 2006, Defendant made or caused to be made false statements on a residential loan application to BB&T, an institution the accounts of which were insured by the FDIC within the meaning of 18 U.S.C. § 1014. Defendant knew that these statements were false, and made these statements for the purpose of influencing the actions of BB&T in the granting of a mortgage loan, all in violation of 18 U.S.C. § 1014.

24. Pursuant to 12 U.S.C. § 1833a, the United States is entitled to recover a civil penalty from Defendant of up to $1 million per false statement. In the case of a continuing violation, the United States may recover up to the lesser of $1 million per day or $5 million in total. If pecuniary gain was derived from a violation, the United States may recover up to the full amount of such pecuniary gain. If the violation resulted in a pecuniary loss to any person other than the violator, then the United States is entitled to recover as a civil penalty up to the amount of the pecuniary loss.

## SECOND CAUSE OF ACTION

25. Plaintiff re-alleges and incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

26. On or about December 28, 2007, Defendant made or caused to be made false statements on a residential loan application to BB&T, an institution the accounts of which were insured by the FDIC within the meaning of 18 U.S.C. § 1014. Defendant knew that these statements were false, and made these statements for the purpose of influencing the actions of BB&T in the granting of a mortgage loan, all in violation of 18 U.S.C. § 1014.

27. Pursuant to 12 U.S.C. § 1833a, the United States is entitled to recover a civil penalty from Defendant of up to $1 million per false statement. In the case of a continuing violation, the United States may recover up to the lesser of $1 million per day or $5 million in total. If pecuniary gain was derived from a violation, the United States may recover up to the full amount of such pecuniary gain. If the violation resulted in a pecuniary loss to any person other than the violator, then the United States is entitled to recover as a civil penalty up to the amount of the pecuniary loss.

## REQUEST FOR RELIEF

Based on the foregoing allegations of the Complaint, the United States respectfully requests that:

1. Pursuant to 12 U.S.C. § 1833a, the United States have and recover by this action a civil money judgment against Defendant in an amount to be determined at trial, but at least in the

amount of any pecuniary gain obtained by the Defendant as a result of the violations alleged herein, and at least in the amount of the pecuniary loss caused to any person other than the Defendant as a result of the violations alleged herein; and

2. All costs and attorneys' fees incurred in this action as permitted by law; and

3. For such further relief as may be permitted by law.

This 5th day of December, 2014.

**ANNE M. TOMPKINS**
United States Attorney
Western District of North Carolina

*s/ Paul B. Taylor*

Paul B. Taylor
Assistant United States Attorney
Chief, Civil Division
N.C. Bar No. 10067
U.S. Courthouse, Room 233
100 Otis Street
Asheville, North Carolina 28801-2611
Tel. 828-271-4661
Paul.Taylor@usdoj.gov